# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

STEPHANIE ROBINSON,        )
         Plaintiff,            )
                             )
       v.                      )        CAUSE NO.:2:12-CV-450-JEM
                             )
CAROLYN W. COLVIN, Acting Commissioner    )
of the Social Security Administration,        )
         Defendant.           )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Stephanie Robinson on November 1, 2012, and Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 28], filed by Plaintiff on April 4, 2013. Plaintiff requests that the June 23, 2011, decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") be reversed or remanded. For the reasons set forth below, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI benefits on December 22, 2006. She alleged disability as of June 15, 2005, due to back problems, headaches, seizures, bad nerves, and high blood pressure. After being denied initially and on reconsideration, a hearing was held in front of Administrative Law Judge ("ALJ") P. Armstrong. Plaintiff's request for review of ALJ Armstrong's denial of benefits was granted, and a second hearing was held on June 8, 2011, in front of ALJ Jason Mastrangelo. Plaintiff, case worker Michelle Peters, and a Vocational Expert ("VE") testified. ALJ Mastrangelo issued a decision on June 23, 2011, finding Plaintiff not disabled and denying benefits. Plaintiff's request for review from the Appeals Council was denied on August 30, 2012, making ALJ Mastrangelo's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff was 44 years old on the date of the ALJ's decision. She had a high school education and past relevant work experience as a child care worker, security guard, cashier, and telemarketer.

### B. Medical Evidence

Plaintiff was taken to the emergency room in June 2005 after suffering a seizure while attending her mother's funeral. Doctors prescribed the anticonvulsant Dilantin in January 2006. She suffered another seizure in November 2006, and a seizure disorder was diagnosed in January 2007. Treating physician Dr. Adolphus Anekwe monitored Plaintiff's seizure disorder and continued to prescribe Dilantin.

Plaintiff began mental health counseling at Tri-City Mental Health Center in September 2007. Dr. Prakash Varghese conducted an intake evaluation. He diagnosed schizoaffective disorder. He determined that Plaintiff had a Global Assessment of Functioning ("GAF") score of 55 and prescribed medications. Plaintiff began regular treatment with psychiatrist Dr. Eugene Kang in November 2007. Plaintiff reported that she experienced auditory and visual hallucinations, had poor eating and sleeping habits, and preferred to not be around others. Plaintiff continued regular treatment with Dr. Kang through December 2011. Throughout her treatment, Dr. Kang assigned GAF scores consistently between 55 and 60.

On April 29, 2009, Dr. Kang completed a Mental Impairment Questionnaire in which he checked boxes indicating that Plaintiff's schizoaffective disorder produced appetite disturbance with weight change, mood disturbance, anhedonia, delusions or hallucinations, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, perceptual disturbance, social withdrawal or isolation, decreased energy, and generalized persistent anxiety. Dr. Kang listed Plaintiff's ability to remember work-like procedures, to understand and remember very short and simple instructions, to maintain attention for a two-hour segment, to work in coordination with or proximity to others without being unduly distracted, to complete a normal workday and workweek without interruptions from psychologically-based symptoms, to perform at a consistent pace without unreasonable number and length of rest periods, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to deal with normal work stress as poor or non-existent. He also checked boxes indicating that Plaintiff's mental impairment produced marked difficulties in maintaining social functioning and constant deficiencies in concentration, persistence, or pace, and he opined that Plaintiff would experience continual episodes of decompensation in work or work-like settings. Dr. Kang concluded that Plaintiff was unable to work.

Plaintiff began seeing psychiatrist Dr. Melvin Hess in January 2011. Dr. Hess affirmed the diagnosis of schizoaffective disorder and continued prescribing Plaintiff's medications. On May 11, 2011, Dr. Hess completed a Mental Impairment Questionnaire in which he checked boxes indicating that Plaintiff was unable to meet competitive standards with regard to completing a normal workday or workweek without interruption from psychologically-based symptoms; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; dealing with normal work stress;

being aware of normal hazards and taking appropriate precautions; understanding remembering, and carrying out detailed instructions; dealing with the stress of semiskilled or skilled work; and interacting appropriately with the public.  Dr. Hess also checked boxes indicating that Plaintiff suffered from moderate restrictions with regard to social functioning and concentration, persistence, or pace and that she was expected to experience one-to-two episodes of decompensation within a twelve month period.  He opined that Plaintiff's mental impairment would cause her to miss more than four days of work each month.

Consultative psychologist Dr. John Heroldt evaluated Plaintiff in February 2010.   Dr. Heroldt recounted Plaintiff's responses to his questioning and concluded that her memory was below average.  When Plaintiff answered that she would leave if she saw smoke and fire in a crowded movie theater, Dr. Heroldt noted "as an aside" that most people with an anxiety problem would answer that they would not be in a crowded movie theater in the first place.  In his summary, Dr. Heroldt included a diagnosis of malingering.  AR 940.

## C.    Plaintiff's Testimony

Plaintiff testified at the hearing that she did not believe she could work a full time job because she has difficulties getting along with people, because she has trouble leaving the house, because she has pain, and because she is schizophrenic.  She said the pain was in her back and knee and that it gets worse when it is cold and in the heat and rain.  She rated the pain on average as an eight on a ten point scale and said she uses a heating pad and Vicodin to attempt to alleviate it.

Plaintiff also testified that she has seizures two to three times a month but that she does not go to the hospital for them because she does not think it helps.  After a seizure, she said it can take months for her memory to return.  She stated that she takes medications to try to control the seizures.

4

When questioned about her mental and emotional health, Plaintiff stated that she has problems with memory and concentration and that she hears voices and sees people. She also said she has problems getting along with people and is more comfortable staying home alone than going out. Plaintiff testified that she has had these problems from an early age but that they recently got worse.

**D.    Testimony of Case Worker Michelle Peters**

Plaintiff's case worker at Regional Mental Health, Michelle Peters, testified as a witness at the hearing. She stated that she visited Plaintiff once a week, every week since she began working at Regional Mental Health two months earlier. The visits lasted about an hour on average. Ms. Peters testified that Plaintiff appeared the same in mood and behavior at home as she did at the hearing. She also testified that she did not believe Plaintiff's testimony to be exaggerated.

When questioned further by the ALJ, Ms. Peters testified that she had never witnessed any of Plaintiff's seizures or noticed any physical difficulties although their interactions did not involve a lot of physical activity.

**E.    ALJ's decision**

The ALJ found that Plaintiff's low back pain, seizure disorder, obesity, and schizoaffective disorder were severe impairments. He also found that Plaintiff did not meet or equal a listed impairment after specifically considering Listing 11.02, 11.03, 12.03, and 12.04, along with the exacerbatory effects of Plaintiff's obesity. The ALJ further found:

> [C]laimant has the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b) and 416.967(b) in that the claimant
> can lift and carry 20 pounds occasionally and 10 pounds frequently;
> the claimant can stand or walk for a total of two hours, and sit for a
> total of six hours, in an eight-hour day with normal breaks; however,
> the claimant can never climb stairs, balance, stoop, kneel, crouch, and

crawl; the claimant must avoid heights and dangerous machinery; the claimant can understand, remember, and carry out simple, routine tasks; the claimant can maintain sufficient pace to complete tasks and meet quotas typically found in unskilled work.

AR 135. Additionally, he found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." AR 137. The ALJ also found that Plaintiff could not perform any of her past relevant work but that there were other jobs that exist in the national economy that she can perform. Accordingly, he found Plaintiff not disabled.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ

"uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing his previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform

despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal or remand of the ALJ's decision based on the following arguments: (1) The ALJ improperly evaluated her seizure disorder in determining whether it met a Listing; (2) The ALJ did not properly account for her mental limitations in her RFC; (3) The ALJ's credibility determination was flawed; and (4) The ALJ erred by giving more weight to the opinions of non-treating, non-examining sources than to those of her treating physician and psychiatrist.

### A.      Epilepsy Seizure Listing Determination

Plaintiff argues that the ALJ improperly evaluated her seizure disorder in determining that it did not meet Listing 11.02 for epilepsy at Step Three. A claimant meets Listing 11.02 if she has "convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. Recognizing that sometimes a description based on first-hand "professional observation is not available," the regulations permit the required description of a claimant's seizures to come from a third party. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00. ("Testimony of persons other than the claimant is essential for description of type and frequency of seizures *if professional observation is*

*not available*.") (emphasis added); *see also* SSR 87-6, 1987 WL 109184, at *3 (1987) ("[I]f

professional observation is not available, it is essential that a description be obtained from a third

party (i.e. family member, neighbor, etc.).").  However, the description of the type and frequency

of a claimant's seizures cannot come from the claimant herself.  20 C.F.R. Pt. 404, Subpt. P, App.

1, § 11.00.  ("Testimony of persons *other than the claimant* is essential for description of type and

frequency of seizures if professional observation is not available.") (emphasis added); *see also* SSR

87-6 at *3 ("Due to the nature of the impairment, a complete description of a seizure cannot be

obtained from the claimant.  Therefore, . . . it is essential that a description be obtained from a third

party.").  In other words, the description of the nature and frequency of a claimant's seizures that

is required to establish that the Listing is met must come from either professional observation or

from a third party, but cannot come from the claimant herself.

    The ALJ concluded that because Plaintiff's own testimony that she had seizures two or three

times a month was not credible and because there was no other description of Plaintiff's seizures in

the record to show the requisite frequency, he could not find that the Listing was met.  Plaintiff does

not contest the ALJ's statement that there is no description of a typical seizure pattern from any

medical source in the record.  However, she argues that when, as in this case, a description of a

claimant's seizures based on a professional's observation is unavailable, an ALJ must *obtain* a

description from the testimony of third parties familiar with the claimant's seizures.  Plaintiff points

to records indicating that others have witnessed Plaintiff's seizures, implying that the ALJ should

have sought additional testimony from those witnesses.

    Indeed, "although a claimant has the burden to prove disability, the ALJ has a duty to

develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (citing *Thompson*

*v. Sullivan*, 933 F.2d 581, 585 (7th Cir.1991)). "Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence." *Id*. at 586. The duty to develop the record does not necessarily always require that an ALJ obtain additional records, tests, or testimony when evidence relevant to the determination of a Listing is missing. *See Griffin v. Barnhart*, 198 F. App'x 561, 564 (7th Cir. 2006) (holding that the ALJ's duty to develop the record did not require the ALJ to order additional tests to determine if the Listing for mental retardation was met when there was only a single reference in the record that even suggested mental retardation *might* be present). However, Ruling 87-6 appears to lend support to Plaintiff's argument that the ALJ was required to do so under the circumstances of this case. It states that "if professional observation is not available, it is essential that a description *be obtained* from a third party (i.e. family member, neighbor, etc.)." SSR 87-6 at *3 (emphasis added); *see also Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986) (concluding that when it appeared that the plaintiff *might* satisfy the criteria of a Listing but the record was insufficient to show whether they *were* satisfied, the ALJ had a duty to "develop the factual record fully and fairly"); *Cook v. Heckler*, 783 F.2d 1168, 1173-74 (4th Cir. 1986) (stating that when tests necessary to determine the existence of Listing criteria were lacking, the ALJ's "failure to ask further questions and to demand the production of further evidence . . . amounted to neglect of his duty to develop the evidence").

Accordingly, the Court remands this matter so that the ALJ —or Plaintiff's attorney—can obtain the necessary description of the nature and frequency of Plaintiff's seizures, either from third parties familiar with Plaintiff's seizures or, if possible, from a medical professional.

**B.    Mental RFC**

Plaintiff next argues that the ALJ did not properly account for her mental limitations in her

RFC. When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform, resulting in an incorrect disability determination. *Kasarsky*, 335 F.3d at 543.

Where there are limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform" or "when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations." *Id.* However, "[t]his exception to the general rule . . . does not apply where . . . the ALJ poses a series of increasingly restrictive hypotheticals to the VE" out of concern "that the VE's attention is focused on the hypotheticals and not on the record." *Id.*

In this case, the ALJ found moderate limitations in concentration, persistence, and pace at Step Three of his analysis. In the discussion of Plaintiff's RFC, the ALJ wrote: "[T]he claimant has

been limited to unskilled work due to moderate concentration and memory deficits that are documented." AR 143. In his ultimate RFC finding, the ALJ wrote that Plaintiff "can understand, remember, and carry out simple, routine tasks" and "can maintain sufficient pace to complete tasks and meet quotas typically found in unskilled work." AR 135. The ALJ also used this phrasing in some of the hypotheticals posed to the VE. AR 93.

Plaintiff argues that the ALJ does not explain *how* moderate limitations in concentration, persistence, and pace translate into "unskilled work." The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The ALJ wrote that "*concentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in the work setting." AR 134. The ALJ did not provide any explanation for how the ability to sustain focused attention and concentration relates to the length of time it takes to learn a job, the defining characteristic of "unskilled work," 20 C.F.R. § 404.1568(a), making it impossible for the Court to follow the path of his reasoning. It is also not otherwise apparent how the two relate from the above definitions alone.

The Commissioner argues that the ALJ's statement in her RFC and a hypothetical posed to the VE that she "can understand, remember, and carry out simple, routine tasks" accounts for Plaintiff's limitations in concentration, persistence, and pace. In the very next paragraph, however, the Commissioner acknowledges that *O'Connor-Spinner* says that an ALJ generally may not account for moderate limitations in concentration, persistence, and pace "by employing terms like 'simple, repetitive tasks' on their own." 627 F.3d at 620. The Commissioner argues, however, that an exception to the general rule applies here because the VE heard the testimony addressing Plaintiff's

13

limitations in concentration, persistence, and pace. *See O'Connor-Spinner*, 627 F.3d at 619 (stating that a hypothetical that does not include the terms "concentration, persistence, or pace" may still be sufficient "when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations.") However, this exception does not apply when, as here, "the ALJ poses a series of increasingly restrictive hypotheticals to the VE" out of concern "that the VE's attention is focused on the hypotheticals and not on the record." *Id.*

The ALJ did not create the necessary "logical bridge" between his finding limitations in concentration, persistence, and pace and his conclusion that Plaintiff could perform "unskilled work" and "understand, remember, and carry out simple, routine tasks." Accordingly, the Court remands with instruction for the ALJ to properly accommodate Plaintiff's limitations in concentration, persistence, and pace in her RFC or to better articulate why a limitation to "unskilled work" serves that purpose.

Plaintiff also argues that the ALJ failed to account for the limitations he found in her social functioning in her RFC. The ALJ also found at Step Three that Plaintiff has mild difficulties in social functioning. The ALJ posed one hypothetical of a person who "would be unable to interact appropriately with coworkers, supervisors, [and] would be unable to deal appropriately with common work stress even in simple work situations." AR 96. However, the ultimate RFC upon which the ALJ based his disability finding included no limitations related to social functioning, and the ALJ provides no explanation for the omission. The Commissioner does not address this argument. Again, the ALJ fails to create the "logical bridge" between his finding that Plaintiff had difficulties in social functioning and his RFC conclusion that included no social limitations. Accordingly, on remand, the ALJ is instructed to address Plaintiff's social functioning difficulties

in his RFC discussion.

## C.    Credibility Determination

Plaintiff also argues that the ALJ's analysis of Plaintiff's credibility was flawed because he used disapproved boilerplate language, placed too much emphasis on a consultative examiner's opinion that Plaintiff was a malingerer, failed to consider Plaintiff's limited daily activities, and failed to properly assess her allegations of pain.

When determining a claimant's RFC, the ALJ is to take into consideration any of the claimant's subjective symptoms that can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.  20 C.F.R. § 404.1529(a).  The ALJ must consider the intensity, persistence, and limiting effects of those symptoms to determine how they affect the claimant's functioning.  20 C.F.R. § 404.1529(c).  If objective medical evidence alone does not substantiate a claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  20 C.F.R. § 404.1529(c).  In coming to a finding on a claimant's credibility, the ALJ must consider the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *See also* SSR 96-7p, 1996 WL 374186, *3 (July 2, 1996).  An ALJ's

credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong" or "based on errors of fact or logic." *Prochaska*, 454 F.3d at 738; *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006).

First, Plaintiff argues that the ALJ's credibility determination used language suggesting that he improperly determined Plaintiff's RFC first and then made credibility findings to fit. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." AR 137. This language has been criticized by the Seventh Circuit Court of Appeals as "meaningless boilerplate" that "implies that the ability to work is determined first and then used to determine the claimant's credibility," which "gets things backwards." *Bjornson v. Astrue*, 671 F.3d 640, 645, 647 (7th Cir. 2012). However, the inclusion of this boilerplate language is not grounds for remand when the ALJ otherwise provides "reasons grounded in evidence" for his credibility finding. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). In this case, the ALJ provided those reasons, stating that Plaintiff's allegations were disproportionate to objective findings in the record, were "compromised by a diagnosis of malingering and by her inconsistent report of illegal drug use," contained numerous inconsistencies between her testimony at the hearing and things she had said in the past, were undermined by her non-compliance with medication, and were inconsistent with the observations of her counselors. AR 143. Accordingly, the ALJ's inclusion of the "boilerplate" language does not by itself necessitate remand.

Plaintiff next argues that the ALJ's credibility finding was not supported by substantial evidence because the evidence cited did not support his conclusion. She argues that the ALJ relied

too heavily on the Dr. Heroldt's opinion that Plaintiff was malingering. The ALJ wrote that Plaintiff's "allegations are compromised by a diagnosis of malingering" from Dr. Heroldt. AR 143. Dr. Heroldt did not explicitly provide a reason for his diagnosis of malingering, although he implied in the description of his examination that some of Plaintiff's answers were evasive. The ALJ specifically noted Dr. Heroldt's notation that when Plaintiff was asked what she would do if she saw fire in a crowded movie theater, she said "Leave," an answer that Dr. Heroldt noted "as an aside" would be unusual for someone with an anxiety disorder because most would answer that they would never *be* in a movie theater. AR 140, 940. Plaintiff argues that the ALJ assigned too much significance       nnbm to this perceived inconsistency. The ALJ did not explain what weight he gave to Dr. Heroldt's opinion or why. However, Plaintiff's malingering diagnosis was just one of many reasons the ALJ gave for not finding Plaintiff credible, and he did not give it any special significance. While the ALJ may want to give more explanation to the weight he assigned Dr. Heroldt's opinion on remand, the Court finds that the amount of attention paid to it does not warrant finding ALJ's credibility determination "patently wrong."

Next, Plaintiff argues that the ALJ failed to explain how he considered her limited daily activities in making the credibility determination. Plaintiff cites evidence in the record to show that she had difficulties with many activities of daily living, arguing that the evidence lends credibility to her allegations of pain. Plaintiff correctly notes that an individual's daily activities are among the factors an ALJ is to consider in making a credibility determination. 20 C.F.R. § 404.1529(c)(3); *See also* SSR 96-7p at *3. However, an ALJ is required only to minimally articulate his analysis and "need not discuss every factor listed in [SSR] 96-7p." *Firestine v. Colvin*, 1:13-CV-00112, 2014 WL 958013 (N.D. Ind. Mar. 11, 2014) (citing *Dullen v. Astrue*, No. 1:10-cv-719, 2011 WL 4625756,

at *8 (S.D. Ind. Sept.30, 2011); *Hoffman v. Barnhart*, No. 02 C 8187, 2005 WL 66049, at *17 (N.D. Ill. Jan. 12, 2005); *Richardson v. Astrue*, No. 1:11cv-01002, 2012 WL 4467566, at *10 (S.D. Ind. Sept. 26, 2012)).  Accordingly, the ALJ's failure to include an analysis of this one factor does not warrant remand.

Finally, Plaintiff argues that the ALJ improperly analyzed her allegations of pain.  At the hearing, Plaintiff testified that she had low and mid-back pain almost every day that she rated an eight on a ten point scale.  Plaintiff argues that the ALJ failed to make any finding on whether there were any medically determinable impairment that could be expected to produce the alleged pain. She argues that he further failed to determine if the alleged intensity, severity, and limiting effects of her pain was consistent with the medical evidence, considering the medications and other measures Plaintiff used to attempt to alleviate her pain, as is required by Ruling 96-7p.  SSR 96-7p at *1, *3.  However, while the ALJ may not have neatly analyzed Plaintiff's allegations of pain all in one place, all the necessary elements of the analysis are scattered throughout decision.  The ALJ noted Plaintiff's back pain and alleged severity.  He stated generically, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR 137. Finally, he wrote that "[a]lthough there is no objective evidence of significant a musculoskeletal condition, no significant treatment for back pain, and no indication that surgery is needed, giving the fullest benefit," he would find an RFC for less than light work to accommodate those allegations. AR 143.  While his consideration of Plaintiff's pain could have been more thorough and better laid out, the Court finds that the ALJ sufficiently articulated his reasoning.

Accordingly, the Court finds no reason to disturb the ALJ's credibility determination.

**D.     Weight of Treating Physician**

Finally, Plaintiff argues that the ALJ erred by giving more weight to the opinions of non-treating, non-examining sources than to those of her treating physician and psychiatrist. A treating physician's opinion regarding the nature and severity of a claimant's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); SSR 96-2p at *1; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). However, when a medical source gives an opinion on an issue reserved to the Commissioner, like that the Plaintiff "is disabled" or "meets a Listing," it will be given no "special significance" and is never entitled to controlling weight. 20 C.F.R. § 404.1527(d)(1), (d)(3); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). If the ALJ declines to give a treating source's opinion controlling weight, she must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder,* 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the

treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Plaintiff first argues that the ALJ erred in giving "little weight" to the opinion of Dr. Anekwe, Plaintiff's primary care physician. The ALJ wrote that he gave the opinion "little weight" because he found that "[t]he evidence in the record did not support it." AR 141. The ALJ wrote that "[c]linical signs and objective findings . . . are scarce" in Dr. Anekwe's records and that Dr. Anekwe "documented nothing more in his office treatment records than her vital signs, weight, subjective complaints, and list of impairments." AR 139, 141. A review of Dr. Anekwe's records confirm the ALJ's assessment that few notes of clinical signs and objective findings exist to support Dr. Anewke's opinion. Accordingly, the ALJ was justified in not giving the opinion controlling weight. *See* SSR 96-2p at *1 ("Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.") The lack of supporting medical signs and laboratory findings is also an acceptable consideration in determining what weight to then give the opinion. 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Also, throughout his decision, the ALJ pointed to evidence in the record that was inconsistent with Dr. Anekwe's opinion, another factor properly considered in weighing the opinion. *See* 20 C.F.R.§ 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Accordingly, the Court finds that the ALJ has adequately supported and articulated his reasoning for giving Dr. Anekwe's opinion little weight.

Plaintiff also argues that the ALJ erred when he assigned "little weight" to the opinion of Dr. Kang, who indicated in the opinion questionnaire that Plaintiff had "marked" limitations in social functioning. The ALJ wrote that he gave the opinion "little weight" because "his treatment notes . . . do not support that the claimant had marked limitations." AR 141. In particular, he wrote, they "do not document memory problems as severe" as accounted for in the opinion and mostly characterize her depression as mild, "and there is even assessment of a euthymic mood at one point." AR 141. The ALJ emphasized that Dr. Kang's assigning GAF scores mostly of 60 was "glaringly inconsistent with marked limitations" in social functioning he checked on the questionnaire. AR 141.

A review of Dr. Kang's treatment notes confirms that the ALJ accurately characterized them. Further, the Diagnostic Statistical Manual of Mental Disorders provides that a GAF between 51 and 61 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR *moderate difficulty* in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* (4th ed. 2000) (emphasis added). Therefore, GAF scores consistently between 55 and 60 constitute substantial evidence of an inconsistency between Dr. Kang's treatment history and his opining that Plaintiff' had *marked* limitations in social functioning. Accordingly, the ALJ was justified in not giving Dr. Kang's opinion controlling weight. The lack of consistency and support in the treatment records also are sufficient reasons for the ALJ to have given the opinion little weight. 20 C.F.R. § 404.1527(c)(3), (c)(4). Plaintiff states that Dr. Kang's treatment records, and GAF scores in particular, reflect a time when she was not working. Accordingly, she argues, those records are not necessarily inconsistent with Dr. Kang's opinion that her limitations would be greater if she had to go back to work. However, it is not the

Court's job to reconsider facts, re-weigh the evidence, or substitute its judgment for that of the ALJ. *See Boiles*, 395 F.3d at 425; *Clifford*, 227 F.3d at 869; *Butera*, 173 F.3d at 1055. Accordingly, the Court finds that the ALJ adequately supported and articulated his support for the weight he gave to Dr. Kang's opinion.

Finally, Plaintiff argues that the ALJ erred in dismissing portions of Dr. Hess's opinion. Dr. Hess's opinion indicated that Plaintiff would be unable to perform skilled or semi-skilled work, but had adequate abilities in nine of sixteen categories of "aptitudes needed to do unskilled work." AR 1144. He also checked boxes indicating that Plaintiff would miss more than four days of work per month, and would not be able to complete a workday without interruptions from psychologically based symptoms. The ALJ wrote that he gave "significant weight" to Dr. Hess's opinion "[i]nsofar as his opinion limits the claimant to unskilled work," but that "neither his treatment notes, nor the credible evidence supports the conclusory opinion that the claimant is unable to work competitively." AR 142. Accordingly, he incorporated many of the limitations checked by Dr. Hess into Plaintiff's RFC but declined to give any weight to the opinion that Plaintiff could not work because Dr. Hess "cite[d] no specific findings and limitations and decides an issue that is ultimately reserved to the Commissioner, without persuasive narrative support or significant clinical findings." AR 142. Plaintiff notes various observations in Dr. Hess's treatment notes from which Dr. Hess "could have reasonably concluded" that Plaintiff was unable to work competitively, arguing that they contradict the ALJ's assessment that Dr. Hess's finding is unsupported. However, while the ALJ certainly could have drawn the same inferences from those notes that Plaintiff proposes, it is not the Court's role to re-evaluate the evidence or substitute its judgment for that of the ALJ. Because the reasons the ALJ cited for not giving Dr. Hess's opinion more weight are valid and his

analysis adequately articulated, the Court declines to remand on this issue.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 28] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of March, 2014.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record